*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0131P (6th Cir.)
File Name:  00a0131p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

OWNER-OPERATOR
INDEPENDENT DRIVERS
ASSOCIATION, INC.; MARK P.
NYE; KENNETH D.
MCFADDEN,
       *Plaintiffs-Appellees,*

       *v.*

KEITH BISSELL,
       *Defendant-Appellant.*



No. 98-6037

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 90-00251—Robert L. Echols, Chief District Judge.

Argued:  September 24, 1999

Decided and Filed:  April 12, 2000

Before:  KRUPANSKY, NELSON, and SILER, Circuit
Judges.

1

———————————

**COUNSEL**

**ARGUED:**    Mark A. Hudson, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellant. W. Gary Blackburn, BLACKBURN, SLOBEY, FREEMAN & HAPPELL, Nashville, Tennessee, for Appellee. **ON BRIEF:** Mark A. Hudson, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellant. W. Gary Blackburn, BLACKBURN, SLOBEY, FREEMAN & HAPPELL, Nashville, Tennessee, Paul D. Cullen, CULLEN LAW FIRM, Washington, D.C., for Appellee.

   SILER, J., delivered the opinion of the court. NELSON, J. (pp. 8-12), delivered a separate opinion concurring in both the opinion of the court and the judgment. KRUPANSKY, J. (pp. 13-34), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

   SILER, Circuit Judge. Defendant, Keith Bissell, a former commissioner for the Tennessee Public Service Commission ("PSC"), was found to have violated the plaintiffs', Mark P. Nye, Kenneth D. McFadden, and Owner-Operator Independent Drivers Association, Inc. ("OOIDA"), constitutional rights. Bissell appealed and this court upheld the district court's decision, but vacated its award of injunctive relief and remanded for clarification. In light of changing circumstances, the award of injunctive relief was found to be unnecessary, but the district court still held OOIDA to be a "prevailing party" and awarded OOIDA attorneys' fees and costs. Bissell now challenges the district court's award of attorneys' fees and costs to OOIDA. For the following reasons, we AFFIRM.

dismissed by the district court, or vacated by this circuit's decision of August 21, 1997.

E.  The declaratory judgment relied upon by the panel majority in the instant appeal to support its reasoning and judgment is non-existent.

F.  The Plaintiffs' have failed to prevail on a single cause of action charged in their complaint.

G.  The district court's *sua sponte* application of the "catalyst test" constituted an abuse of discretion and was unwarranted.

H.  Plaintiffs have failed to carry their burden to prove that they were a "prevailing party" against Bissell.

Accordingly, for the reasons stated herein, I would reverse the district court's decision to award Plaintiffs' attorney fees as prevailing parties against Bissell in the amount of $584,200.00, and remand the case with instructions to the district court to vacate its judgment.

## BACKGROUND

OOIDA brought an action against defendants PSC, Bissell, and two officers of PSC alleging that the defendants violated the Fourth Amendment by conducting unreasonable searches of trucks traveling on public state and interstate highways in Tennessee.  OOIDA also brought a claim under 42 U.S.C. § 1983 for violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment and the Commerce Clause of Article I, Section 8, Clause 5 of the Constitution.  Thereafter, summary judgment was granted by the district court in favor of all the defendants on the Fourth Amendment issue, as well as for the two PSC officers on the remaining issues.  All claims against PSC were dismissed pursuant to the Eleventh Amendment which grants states immunity from suits in federal court.  After a bench trial, the district court found that Bissell had violated OOIDA's constitutional rights and enjoined Bissell from continuing to violate the plaintiffs' rights.  The district court also awarded OOIDA reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

This court upheld the district court's grants of summary judgment, but vacated the district court's award of injunctive relief finding that it was too vague.  We remanded the case with instructions to the district court to determine if injunctive relief was still necessary since Bissell had resigned as a commissioner, and the PSC had been abolished by the Tennessee legislature.

On remand, the district court found that, in light of the changed circumstances, no irreparable damage could be done, and, therefore, injunctive relief was not necessary.  The district court also found that OOIDA was still a "prevailing party" entitled to attorneys' fees and reasonable costs under 42 U.S.C. § 1988.  Citing *Perket v. Secretary of Health and Human Services*, 905 F.2d 129, 132 (6th Cir. 1990), the district court stated that, although OOIDA had not ultimately received any judicially awarded relief, it had demonstrated that the present "lawsuit acted as a 'catalyst' in prompting

defendants to take the desired action" and awarded OOIDA $515,700 for fees and $68,500 for costs.

## STANDARD OF REVIEW

This court reviews awards of attorneys' fees under an abuse of discretion standard. *Loudermill. v. Cleveland Bd. of Educ.*, 844 F.2d 304, 308-09(6th Cir. 1988). "A district court abuses its discretion when it relies on clearly erroneous findings of fact ... or when it improperly applies the law or uses an erroneous legal standard." *Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., Inc.*, 753 F.2d 1354, 1356 (6th Cir. 1985)(citations omitted). Under this standard, this court must review the district court's legal conclusions *de novo* and its factual findings for clear error. *Perket*, 905 F.2d at 132.

## DISCUSSION

Under 42 U.S.C. § 1988, district courts have the discretion to award attorneys' fees to a "prevailing party" in a civil rights lawsuit. A "prevailing party" need not actually prevail on the merits of its claim so long as it "suceed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v Eckerhart*, 461 U.S. 424, 433 (1983), quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978). Any enforceable judgment, or comparable type of relief, or settlement, therefore, will generally make a plaintiff a "prevailing party" as long as "his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). A plaintiff is benefitted by "monetary damages, injunctive relief, or a voluntary change in a defendant's conduct." *Woolridge v. Marlene Indus.*, 898 F.2d 1169, 1173 (6th Cir. 1990).

If the plaintiff's relief stems from a voluntary change in the defendant's conduct, the plaintiff must show that his or her lawsuit was the "catalyst" behind that change. *Payne v. Board of Educ., Cleveland City Schools,* 88 F.3d 392, 397

original appellate panel that decided this case, to impress and attach greater weight and veracity to the result-oriented commentaries that follow it and which are currently beyond corroboration. Moreover, the concurring opinion seeks additional weight and veracity by implying the concurrence and endorsement of the other judges who participated in the initial discussion by convoluted rhetorical innuendoes, such as: "[o]n appeal, *we* vacated the injunction…"; "[w]e did so not because…"; "because *we* thought…"; "[w]e did not question…"; "unless the district court knew something that *we* did not…"; etc. (Emphases added).

Because the concurring opinion conveys questionable implications, it should be disregarded as a contributing factor in the instant appeal.

To briefly recapitulate, I dissent because:

A.  This circuit's decision of August 21, 1997 was a final deposition of this case; hence,

   1.  the principles of *res judicata* apply to its findings of fact and conclusions of law; and

   2.  its findings of fact and conclusions of law constitute the law of the case.

B.  The district court's failure to respond to this circuit's mandate "to describe in reasonable detail" the extent of Bissell's unconstitutional behavior leaves the record of evidence against Bissell *unchanged*. It was, and is, currently insufficient to support the district court's decision which was vacated.

C.  The Plaintiffs failed to prove any constitutional infractions to support their 42 U.S.C. § 1983 claims against Bissell.

D.  All of the Plaintiffs' requests seeking declaratory judgment and injunctive relief were either denied or

without accepting its reasoning. He is free to concur in part and dissent in part with a proposed opinion. He may concur with a proposed opinion and submit his personal views and reasons in a separate concurring opinion. He may enter a dissent to a proposed opinion or he may concur without reservation in the reasoning and disposition articulated in a proposed decision. However, thus having exercised his option, including a voluntary preference to remain silent, to express his position and participation in a given case, his election, is irreversible, a *fait accompli*, as it relates to that case.

The author of the concurring opinion in this appeal agreed without comment, condition, or reservation in this circuit's reasoning and disposition in *Owner-Operator Independent Drivers Association v. Bissell*, No. 94-6178/6179, 1997 WL 525411 (6th Cir. Aug. 21, 1997). By remaining silent he waived any option subsequently to explain or express the reason for his vote to concur in the decision. The opinion issued by the original panel of this circuit is simple, clear, concise, unambiguous, and understandable. It needs no interpretation.

It would be highly irregular and inappropriate under any circumstances for a single member of a three-judge appellate panel to revisit a decision of that panel and unilaterally seek to rewrite and revise the text and substance of the decision ostensibly with the inferred approval of his associate judges who participated in the disposition of the appellate controversy.

The concurring opinion in this appellate review has the same objective. It seeks by revision unilaterally to infuse an element of intent and purpose into the August 21, 1997 decision of this circuit that cannot be inferred or implied from the written text of that decision.

The opening paragraph of the concurring opinion of the instant appeal announces that its author was a member of the

(6th Cir. 1996). The district courts use a two-part test to determine whether a plaintiff's lawsuit is the "catalyst" to a defendant's changed behavior:

> First, in order to qualify as a "prevailing party," a plaintiff must demonstrate that his or her lawsuit was causally related to securing the relief obtained. This determination is factual.
>
> Secondly, plaintiff must establish some minimum basis in law for the relief secured .... "If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense."

*Johnston v. Jago*, 691 F.2d 283, 286 (6th Cir. 1982), quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 281 (1st Cir. 1978). *See Hewitt v. Helms*, 482 U.S. 755, 761 (1987)("[I]f the defendant, under pressure of the lawsuit, alters his conduct ... towards the plaintiff that was the basis for the suit, the plaintiff will have prevailed."). Although not conclusive, chronological evidence is a factor in determining whether a plaintiff's lawsuit is the catalyst for the defendant's changed conduct. *Payne*, 88 F.3d at 399.

Bissell submits that the district court erred by applying the catalyst test because his resignation and the abolition of the PSC were not voluntary actions in response to the OOIDA's lawsuit. According to Bissell, the district court failed to make any findings of facts when determining whether OOIDA was a "prevailing party." When deciding to award OOIDA attorneys' fees and costs, the district court stated:

> In the present case, the Court initially awarded injunctive relief to Plaintiff after concluding that Defendant Bissell's conduct violated Plaintiff's constitutional rights. The Court's opinion contained specific findings of discriminatory and unconstitutional policies and practices of the Defendants, as well as numerous illegal

acts by employees of the PSC. In vacating the injunction, the Sixth Circuit did not disturb any of the Court's substantive findings and conclusions regarding these matters, including Defendant Bissell's unconstitutional behavior. Rather, the appellant court merely vacated the injunction because of its uncertain demands and directed the Court to clarify the injunction's language, and to consider whether Defendant's conduct warrants such injunctive relief now that the PSC has been abolished and Defendant is no longer a commissioner. The sole reason this Court did not reissue the injunction on remand was the state's interim decision to eliminate the PSC entirely, along with Defendant Bissell's resignation from his position as commissioner. *These actions were largely in response to the Court's determination that widespread unconstitutional practices were taking place*. The Court finds that, as in *Village of Crestwood*, Defendants' remedial actions were causally linked to Plaintiffs' institution of suit and initial victory in this Court. (Emphasis added.)

The evidence is undisputed. OOIDA received declaratory and injunctive relief from the district court on the merits of its case. Consequently, the district court found that OOIDA was the "prevailing party" entitled to attorneys' fees. This court upheld the district court's declaratory judgment and only vacated the award of injunctive relief so that the district court could clarify its ruling. It is also undisputed that Bissell's resignation and the abolition of the PSC occurred after OOIDA filed its lawsuit. Although the record does lack specific findings of fact by the district court to support its conclusion that Bissell's actions and the abolition of the PSC were in response to the district court's early holding that widespread unconstitutional practices were taking place, the declaratory judgment issued by the district court is sufficient reason alone to deem OOIDA a "prevailing party" in this

*Black's Law Dictionary, Fifth Edition,* provides the following definition,

> Vacate. To annul; to set aside; to cancel or rescind. To render an act void; as to vacate an entry of record, or a judgment.

BLACK'S LAW DICTIONARY 1388 (5th ed. 1979). The circuit court decision voided the district court's memorandum opinion in its entirety and admonished the trial judge upon remand to consider the propriety of enjoining Bissell under any circumstances since he was only one of three elected commissioners that administered the PSC.

Moreover, the trial judge's repetitious argument is highly implausible in the absence of any remaining viable declaratory judgment that could anchor the district court's and the instant panel majority's reasoning and conclusions.

The circuit court's decision of August 21, 1997 vacating the district court's memorandum opinion of August 10, 1994, endorsed the conclusion that the declaratory judgment, repeatedly alluded to by the trial judge, and a reason that prompted the panel majority to conclude that "the declaratory judgment issued by the district court is sufficient reason alone to deem OOIDA a prevailing party in this case," was a fiction, a fact which is the *coup de grace* to the panel majority's reasoning.

Lastly, I take issue with the concurring opinion's commentaries and the inferences implicit therein. It is recognized that judges have wide discretion to question and distinguish, by interpretation, the precedential value of cited legal authority and its application to a fact specific scenario.

It is also equally recognized that individual members of a three-judge appellate reviewing panel are entrusted with a wide array of discretionary options to express their individual unrestrained opinions as those opinions apply to a given disposition. A judge may concur in the result of an opinion

OOIDA's constitutional rights. When the district court failed to comply, this court's August 21, 1997 disposition became the law of the case and subject to the principle of *res judicata*. *See Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994). The earlier decision cannot be overruled, set aside, modified, or amended except by *en banc* disposition or by a ruling of the Supreme Court.[6]  The trial judge has repeatedly argued that, "[i]n vacating the injunction, the Sixth Circuit did not disturb any of the Court's [unidentified] substantive findings and conclusions regarding these [unidentified] matters, including Defendant Bissell's [unidentified] unconstitutional behavior," a repetitious argument which has apparently received favorable panel majority consideration.

Contrary to the district court's argument, however, the circuit court order of August 21, 1997 was clear, concise, and understandable.  It was unconditional.  It reserved no substantive findings of fact or conclusions of law purportedly incorporated into the trial court's decision, because the circuit court concluded that such findings of fact and conclusions of law, particularly those implicating Bissell, were non-existent.

---

[6]*See, e.g.*, *United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996) (propounding that "[c]ustom and tradition in the various circuits of the United States Court of Appeals dictate that one panel of a circuit court will not overrule the decision of another panel; only the court sitting *en banc* may overrule a prior decision of a panel.") (citation omitted); *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (explaining that "[u]nder the doctrine of law of the case, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation.") (citation omitted).  In the case *sub judice*, a prior panel of the Sixth Circuit determined that the district court had not made sufficient findings to support its injunction against Bissell, and accordingly vacated the injunction and remanded the action for reconsideration. Following remand, the district court made no findings supportive of its prior injunction. Accordingly, the prior circuit court panel ruling that the district court's injunction against Bissell was unsupported by adequate factual findings remains the law of the case, which the current panel may not disturb.

case.[1]  Therefore, the district court did not abuse its discretion in awarding OOIDA attorneys' fees and reasonable costs.

The eloquent dissent suggests that this opinion is contrary to our prior decision in *Owner-Operator Independent Drivers Ass'n v. Bissell*, No. 94-6178/6179, 1997 WL 525411 (6th Cir. August 21, 1997), but it is not intended to contradict our prior decision and does not in fact contradict it.  Our prior decision did not set aside a declaratory judgment obtained by OOIDA, and the record shows that OOIDA likely would have obtained injunctive or other relief against Bissell had Bissell remained in office and had the PSC existed in its previous structure.

AFFIRMED.

---

[1]The dissent finds fault in this statement.  Although *Rhodes v. Stewart*, 488 U.S. 1, 3 (1988), states that nothing in *Hewitt v. Helms*, 482 U.S. 755 (1987), "suggested that the entry of [a declaratory] judgment in a party's favor automatically renders that party prevailing under § 1988," it clarifies that by holding that the judgment must affect the behavior of the defendant toward the plaintiff.  *Rhodes*, 488 U.S. at 3.  That has occurred here.  The declaratory judgment operated as a catalyst to force Bissell's resignation and a restructure of the PSC.  That was the conclusion of the district court which had no direct evidence on that issue but had ample circumstantial evidence upon which it could have drawn that inference.

———————————

## CONCURRENCE

———————————

DAVID A. NELSON, Circuit Judge, concurring. I concur in the judgment and in the opinion Judge Siler has written for the court. As a member of the panel that vacated the district court's injunction, however, I should like to add a few words explaining why I do not believe that the district court misunderstood what it was being asked to do on remand.

By way of background, it is worth noting that the district court had already delivered itself of a 43-page memorandum opinion, entered on August 10, 1994, following an 11-day bench trial. The opinion contained extensive findings on how out-of-state truckers were discriminated against in favor of in-state truckers in the enforcement of Tennessee's motor carrier safety regulations.

The district court found, for example, that enforcement officers in East Tennessee were told by Public Service Commissioner Bissell to stop checking for safety defects in trucks that were leaving Tennessee. Bissell, the court determined, told the officers to limit their safety inspection efforts to trucks coming from outside the state. The court further found that "[t]he policy followed in East Tennessee tended to favor in-state trucking companies over out-of-state trucking companies;" that trucks traveling in both directions should have been inspected for safety violations; and that there were inspection points in Middle and West Tennessee where trucks going in both directions were inspected.

Discrimination against out-of-state truckers was linked to extensive fund-raising efforts conducted among Tennessee trucking companies by and on behalf of individual commissioners, including Commissioner Bissell. A Public Service Commission enforcement officer testified, for example, that he drove Bissell's administrative assistant –

Consequently, it is *impossible to comprehend the bounds of the district court's order* and *we must vacate the injunction.*

*Bissell*, 1997 WL 525411, at *2 (emphases added). The concise language of the opinion repudiates the district court's exculpatory statement. Moreover, the court's record of this case belies the district court's representation that "these actions [the abolition of the PSC and Bissell's resignation as one of its three elected commissioners] were largely in response to the Court's determination that widespread unconstitutional practices were taking place." That statement also contradicts this court's previous admonition that "upon remand the district court should consider whether [Bissell's] specific conduct warrants injunctive relief against him, and indeed the propriety of any such relief since Bissell was just one of three Commissioners…." *Bissell*, 1997 WL 525411, at *2.

The legal effect of this court's previous order vacating the trial court's first judgment against Bissell in *Owner-Operator Independent Drivers Ass'n v. Bissell*, No. 94-6178/6179, 1997 WL 525411 (6th Cir. Aug. 21, 1997) was a mandate to the district court soliciting a declaratory judgment[5] defining the "extent of Bissell's objectionable activities," *Bissell*, 1997 WL 525411, at *2, if any existed, that infringed

———————————

[5]Factually, contrary to the panel majority's conclusion, the previous decision of this court disclaimed the existence of a declaratory judgment that had adjudicated the rights and status as between OOIDA and Bissell as demonstrated by its decision vacating the trial court's injunction which purportedly embraced what now clearly surfaces as a discredited illusion in light of the previous panel's inquiry seeking inculpatory unconstitutional activities committed by Bissell which were detrimental to OOIDA.

Black's Law Dictionary describes "declaratory judgment" as a "remedy for determination of a justiciable controversy where the plaintiff is in doubt as to his legal rights." BLACK'S LAW DICTIONARY 368 (5th ed. 1979).

*Bissell was just one of three commissioners*, is no longer a commissioner, and the Commission itself was abolished to be replaced by an agency whose directors are no longer elected.

*Bissell*, 1997 WL 525411, at *2 (emphasis added).

The thrust of this court's first unedited disposition was an order directing the district court to identify "the extent of Bissell's objectionable activities," *Id.*, so that it could evaluate the validity of any future district court ordered injunction or other sanction issued against Bissell.

Unfortunately, the district court elected to ignore this court's initial directive to declare the "extent of Bissell's objectionable activities," *Id.*, that it had relied upon to support its vacated injunction. Instead, it determined "that in light of the abolishment of the PSC, and the fact that Defendant Bissell no longer held office, there is no compelling reason for the issuance of an injunction against Defendant Bissell at this point."

The panel majority's reliance upon the district court's self-serving and totally inaccurate interpretation of this court's first decree is troubling. When juxtaposed, it is facially apparent that the district court's observation that, "[i]n vacating the injunction, the Sixth Circuit did not disturb any of the court's substantive findings and conclusions regarding these matters, *including Defendant Bissell's unconstitutional behavior,*" (emphasis added), is a misstatement of this court's previous opinion, for the obvious reason that such inculpating findings implicating Bissell were non-existent in the court's record of proceedings. The very reason that the injunction against Bissell was vacated was:

  because the district court's findings of fact and conclusions of law [the declaratory judgment aspect of its decision] consistently attribute conduct to 'defendants,' rather than Bissell individually, making it impossible to discern the extent of Bissell's objectionable activities. …

Jackie Pope, whom Bissell described as his "alter ego" – from one Tennessee trucking company to another to solicit campaign funds for Bissell. Another enforcement officer testified that his superior told him to "go over to Jefferson County and lean on a certain trucking company because they had not contributed to Commissioner Bissell's campaign." And, as the district court further found,

  "Fund-raising tickets were sold by enforcement officers while in uniform and on duty. Jackie Pope reminded officers that the commissioner's election was coming and they needed to help 'keep our man in office.' He sent a list of past contributors to officers in the field to assist in their fund-raising efforts. On occasion, the request to sell fund-raising tickets came directly from Commissioner Bissell, Jackie Pope, or other PSC staff members. Other such requests came from supervisors in the field. One sergeant told an enforcement officer that 'it was better to sell tickets than work midnight at the scales.' One officer was asked to go to the office of an owner of a regulated company to replace a corporate check written to Commissioner Bissell's campaign, which is illegal, with cash or a personal check."

Commissioner Bissell's fund-raising efforts were hardly isolated, and I do not believe that we intended to suggest otherwise when this case was last before us.

The generosity of the Tennessee trucking companies did not go unrewarded, the district court found: "The proof at trial presented a significant connection between the perceived, and sometimes actual, political clout of some in-state motor carriers and the decisions of enforcement officers in administering the truck safety regulations." A graphic illustration of the connection may be found in the following passage from the district court's opinion:

  "One officer testified that after writing a citation on a Tennessee truck company, he received a call from his

supervising sergeant who told him that the trucking company had just contributed to the commissioner's campaign and the owners had asked Jackie Pope, Commissioner Bissell's administrative assistant, if they could get some help on the ticket. Pope conveyed the request for help directly to the issuing officer's supervisor and the sergeant went to court and had the citation dismissed." (Footnote omitted.)

After noting that it was the plaintiffs' burden to establish that "each" defendant had deliberately deprived the plaintiffs of a constitutional or statutory right, the district court found that

"the Defendants engaged in a continuous pattern and practice of intentional discrimination against out-of-state trucking companies and in favor of in-state trucking companies, and those trucking companies which had supported or contributed to the political campaigns of PSC Commissioners."

This intentional discrimination, the court concluded, constituted a violation of the plaintiff's rights under the Equal Protection and Commerce Clauses of the United States Constitution. The district court issued an express declaration to that effect in the concluding portion of its opinion, and went on to enjoin defendant Bissell "from continuing to violate the plaintiff's rights."

On appeal, we vacated the injunction. We did so not because we thought the district court had erred in any of its factual findings, but because we thought it unclear to what extent the district court intended to find involvement by Bissell in various categories of discriminatory conduct attributed to "the defendants" generally, just as we thought it unclear how broad the injunction against Bissell was intended

Accordingly, without constitutional foundations, both 42 U.S.C. § 1983 charges against Bissell entertained and decided by the district court must fail, and the district court's decision must be reversed.

Subsequent to a trial of both issues, the district court released its ambiguous opinion of August 10, 1994 which enjoined Bissell "from continuing to violate the Plaintiffs' rights." The declaratory judgment and related injunction against Bissell were, by a previous panel of this court, *vacated* and "remanded to allow the district court to conduct further proceedings consistent with this opinion." *Owner-Operator Independent Drivers Ass'n  v. Bissell*, No. 94-6178/6179, 1997 WL 525411, at *3 (6th Cir. Aug. 21, 1997). The earlier panel of this court had decided that:

The district court's one sentence injunction in this case, enjoining Bissell   'from continuing to violate the Plaintiff's rights,' falls considerably short of satisfying the requirements of Rule 65(d). *The court failed to use specific terms or to describe in reasonable detail the acts sought to be restrained. Precision is especially important in this case because the district court's findings of fact and conclusions of law consistently attribute conduct to 'defendants,' rather than to Bissell individually, making it impossible to discern the extent of Bissell's objectionable activities.*

*Bissell*, 1997 WL 525411, at *2 (emphasis added). It went on to observe that the only findings of fact which may have implicated Bissell were his suggestions that officers sell fund-raising tickets and concentrate their enforcement inspections on inbound traffic.

After vacating the injunction against Bissell, the previous panel of this court admonished that:

upon remand the district court should *consider whether that specific conduct warrants injunctive relief against him, and indeed the propriety of any such relief since*

unlawful activity or other identifiable impropriety attributable to Bissell or his staff was disclosed by the reviewable record of these proceedings. This is confirmed by the unedited version of this court's decision of August 21, 1997, which vacated the district court decision and remanded the case with instructions to identify Bissell's unconstitutional behavior, if any existed. The district court ignored the instructions without elaborating on its original factually unsupported conclusory statements.

The district court's decision declaring the Commission's alleged practice of selectively enforcing safety regulations in favor of in-state trucking companies by concentrating border enforcement on incoming traffic to be unconstitutional was equally erroneous.

The district court's opinion noted that "Tennessee's truck safety inspection program is designed to be part of a uniform national plan *whereby all states check for safety violations in their respective states*." (Emphasis added). Logic and common sense dictate that out-of-state truckers enter Tennessee and after completing their business leave its borders by crossing into the enforcement jurisdiction of an adjacent sister state that implements its own inspection program. Logic and common sense also dictate that concentrated enforcement inspection of incoming truck traffic more effectively serves Tennessee's enforcement purpose of protecting its citizens from safety hazards inherent to vehicular mechanical failures while operated within its borders. Implementation of the policy is also less costly for Tennessee and out-of-state truckers by relieving both from a second, time-consuming, unnecessarily replicating inspection. The policy, on its face, is without constitutionally discriminatory implications.

---

called upon them and solicited their support for his boss, a PSC commissioner, is misconceived.

to be and what specific acts he was to be enjoined from performing.[1]

We did not question the proposition that the orders given by Bissell to stop checking out-bound trucks for safety defects and to limit safety inspections to in-bound vehicles could support the claims – found meritorious by the district court – of Equal Protection and Commerce Clause violations. With respect to the injunction, however, we directed the district court to consider, on remand, "whether that specific conduct warrants injunctive relief against [Bissell], and indeed the propriety of any such relief since Bissell was just one of three commissioners, is no longer a commissioner, and the Commission itself was abolished to be replaced by an agency whose directors are no longer elected."

Unlike our dissenting colleague, I do not read this language as an unconditional mandate to determine what unconstitutional activities Bissell had engaged in beyond directing that safety inspections be limited to in-bound traffic. Such a determination would have been necessary, to be sure, if the district court had decided to issue an injunction going beyond the in-bound out-bound matter – but unless the district court knew something that we did not, it seemed obvious to us that the need for any injunction at all had become moot. The district court agreed; soon after the remand, the court entered a brief order saying that no further injunction would issue. This order was in no way inconsistent with our mandate.

The plaintiffs then filed a supplemental application for attorney fees under 42 U.S.C. § 1988. The district court

---

[1]The dissenting opinion questions my use of the plural pronoun in this and the following two paragraphs. The point, I believe, is well taken – I cannot, and should not purport to, speak for the other members of the earlier panel. I am entitled to express my individual views as to what the earlier panel did and did not do, however, and those views, as reflected in this concurring opinion, remain unchanged.

granted the application as to defendant Bissell, finding that as far as he was concerned the plaintiffs were the prevailing parties because the lawsuit "acted as a 'catalyst,'" within the meaning of *Perket v. Sec'y of HHS*, 905 F.2d 129, 132 (6th Cir. 1990), "in prompting [defendant Bissell] to take the desired action."

What was the "desired action?" For one thing, as the amended complaint makes clear, it was that the defendants stop "undertaking, enforcing, maintaining or adopting any policies, procedures or acts which result in any discrimination against out-of-state trucks or their operators or owners."

The fact that Bissell personally had been guilty of such discrimination is evident from the district court's findings. The fact that Bissell ultimately stopped discriminating is evident from his resignation. The plaintiffs may not have expected to achieve their desired goal – an end to the unconstitutional discrimination – through the resignation of Commissioner Bissell and the abolition of the Commission itself, but the goal seems to have been achieved.

I am not prepared to say that the district court – more familiar with this situation than I – was out of bounds in concluding that the lawsuit, with its rather dramatic judicial findings, had a catalytic effect in ending the discrimination complained of. I therefore concur in the affirmance of the challenged order.

be unconstitutional absent related unlawful activity.[4]   No

---

[4]The solicitation of political contributions through the sale of fund-raising tickets to fund-raising political events sponsored by candidates seeking election or reelection to public office, and/or their appointed bureaucratic employees, by private individuals, special interest groups, corporations and other business enterprises, all or most of whom seek the prestige of individual recognition through access to authority and/or future favorable recognition and consideration by the candidate if elected, is an American way of political life. The reality of this political practice is measured in the daily testimony of printed, audio, and visual media coverage of evolving current political events. The practice is neither sinister nor unconstitutional. The statement of Jackie Pope, an administrative assistant to Bissell, reminding and urging appointed bureaucratic employees to "keep our man in office" is the battle cry echoed by similarly situated appointed bureaucrats throughout the country interested in employment longevity. In the instant case the record fails to disclose any discrimination in the sale of fund-raising tickets. They were available to both in-state and out-of-state truckers on an equal basis.

Before concluding these observations it should be noted that the district court reference to the Commission's policy restricting political activity within the agency and its explanatory footnote is of questionable significance to the facts of this case. It does, however, reflect the confusion of the trial judge. In its opinion the trial court stated, "On January 1, 1988, the PSC adopted a new written policy *prohibiting enforcement officers* from soliciting campaign contributions *from any of the trucking companies which were regulated by the PSC. The policy was adopted in order to eliminate prior widespread political and fund-raising activities by PSC employees among regulated companies*." (Emphases added). Paragraph three of the Commission's policy, which is the pertinent section of the policy to this case, provides: "No division employee of the Tennessee Public Service Commission shall directly or indirectly solicit or take part in soliciting any assessment, subscription or contribution *for* [not from] any regulated company, an agency of a regulated company, or an employee of a regulated company. *No person shall knowingly solicit any such assessment, subscription or contribution of any employee of the Tennessee Public Service Commission*." (Emphasis added). Obviously, the district court observation that:

> The policy recognizes the inherent conflict of interest which exists when a PSC enforcement officer is faced with the decision to issue a citation to a regulated trucking company for a safety violation when he has previously solicited campaign funds from the owners and employees of the company or has otherwise

enforcing a policy of collecting roadside cash bonds to insure a purported out-of-state violator's court appearance to answer charges of alleged infractions stemming from vehicle inspections. The district court dismissed that requested declaration and concluded that the PSC policy was valid. The complaint also requested a permanent injunction enjoining Defendants and their officers, employees, or agents from undertaking, enforcing, maintaining, or adopting any policies, procedures, or acts which would result in *any* discrimination against out-of-state trucks, their owners, or operators -- a meaningless vague request of no legal significance.

Ultimately, the district court dismissed all claims for declaratory and related injunctive relief against the Defendants, except Plaintiffs' charges concerning the *Commission's* alleged practice which permitted its officers and employees to solicit regulated trucking companies for political campaign contributions by selling tickets to Bissell-sponsored fund-raising affairs designed to promote his reelection campaign in return for alleged purported related favorable considerations. The district court also retained § 1983 jurisdiction to decide if the Commission's policy of concentrating its border inspections to incoming truck traffic discriminated against out-of-state truckers in favor of in-state truckers, thus violating § 1983 by infringing their Due Process and Equal Protection guarantees as well as the Commerce Clause of Article I, § 8(3) of the United States Constitution.

In considering the implication of Bissell's alleged unconstitutional behavior, or lack thereof, as a condition for invoking § 1983 jurisdiction, comprehensive research has disclosed no Supreme Court, Sixth Circuit, or other circuit precedent that has declared the solicitation of political contributions via the sale of tickets to fund-raising events to

_____

## DISSENT

_____

KRUPANSKY, Circuit Judge, dissenting. I respectfully dissent from the majority's decision to affirm the trial court's award of attorney fees in the amount of $515,700, plus $68,500 in costs, to the Plaintiffs as "prevailing parties" pursuant to 42 U.S.C. § 1988 against Keith Bissell as the single remaining defendant in this case that originated as a multiple-defendant action.[1] The district court's decision has conveniently framed the issue here on appeal in the following statement:

> [A]lthough Plaintiffs *did not* ultimately receive *judicially-awarded relief*, they have demonstrated that the present lawsuit "*acted as a catalyst*" in prompting Defendants to take the desired action.

> In sum, the Court finds that Plaintiffs are not the "prevailing party" as against Defendant PSC, but are the "prevailing party" as against Defendant Bissell. Thus, Plaintiffs are entitled to recover from Defendant Bissell an award of attorney's fees and costs under Section 1988.

_____

[1] The district court denied the Plaintiffs' motion to join the remaining two elected Public Service Commissioners, Steve Hewlett and Frank Cochran, as parties defendant to this action, persons who exercised essentially the same responsibility and authority in the administration of the PSC as did Bissell.

Having denied the Plaintiffs' motion to join Cochran and Hewlett as parties defendant, the district court committed reversible error by subsequently ordering Bissell to pay attorney fees arising from purported unconstitutional acts that he could not have committed without a vote of approval from at least one other elected member of the PSC.

Unfortunately, neither the district court, nor the panel majority, nor the Joint Appendix, has defined the "*desired action*" that resulted from the "catalytic effect" of Plaintiffs' lawsuit which changed the legal relationship between Plaintiffs and any of the Defendants, including Bissell, that would warrant an award of attorney fees to Plaintiffs as prevailing parties pursuant to 42 U.S.C. § 1988. *Farrar v. Hobby*, 506 U.S. 102 (1992).

Accordingly, for purposes of this dissent, it is assumed that the "*desired catalytic action*" alluded to by the trial court, and promoted by Plaintiff OOIDA, was the fortuitous abolition of the elected three-member Tennessee Public Service Commission ("PSC") by the Tennessee General Assembly and the reassignment of its authority and responsibility to an *appointed Board of Directors and other existing state agencies*; and the resignation of Keith Bissell, *one of the three elected commissioners*. Both actions were voluntarily undertaken and not required by law or judicial decree.

In light of this court's earlier decision reversing and remanding this case to the trial court with instructions to reconsider its disposition (*Owner-Operator Independent Drivers Ass'n v. Bissell*, No. 94-6178/6179, 1997 WL 525411 (6th Cir. Aug. 21, 1997)), the district court's *sua sponte* application of the "catalyst test" to support its decision that OOIDA's lawsuit caused the Tennessee state legislature to eliminate its elected PSC and reassign its duties and responsibilities to an appointed Board of Directors and, in some instances, other existing agencies, and caused Bissell to resign as one of its three elected commissioners, taxes reasonable logic and comprehension.[2]

---

[2] An insight into the intra-organizational structure of the PSC will offer some understanding of the difficulty in assigning individual responsibility within the table of organization of that vast compartmentalized state authority.

The Tennessee Public Service Commission was composed of nine

A declaratory judgment, in this respect, is no different from any other judgment. It will constitute relief, for purposes of § 1988, if, and only if, it affects the behavior of the defendant toward the plaintiff.

*Rhodes*, 488 U.S. at, 3-4.

The much heralded but unidentified, elusive declaratory judgment which is the common thread that is central to the district court's decision and the panel majority's reasoning and ultimate decision has prompted an examination into its origin and viability. The Plaintiffs' Complaint and Prayer for Relief affords a reasonable point to commence such an inquiry.

At the outset it is worthy to note that this is an action invoking 42 U.S.C. § 1983 seeking declaratory judgment and injunctive relief that would permanently enjoin the defendants from impinging the Plaintiffs' *constitutional rights* guaranteed by the Fourteenth Amendment to the United States Constitution. Accordingly, a constitutional violation is a condition precedent for invoking § 1983 jurisdiction. *See* 42 U.S.C. § 1983.

The Plaintiffs' complaint requested the court to enter seven declarations of unconstitutional behavior attributable to "Defendants," of which two charged Bissell individually with unconstitutional behavior. Five of the seven declarations sought to condemn searches of truck cab interiors, cab sleeping compartments, and truck interiors without probable cause or a search warrant as violations of Plaintiffs' Fourth Amendment constitutional rights. All five were dismissed by the district court. Those dismissals were affirmed by the earlier appellate review of this court on August 21, 1997. Another requested declaration and interrelated injunction sought to enjoin the PSC from maintaining a quota system of enforcement which was abandoned by Plaintiffs without consideration by the district court. Another requested declaration sought to condemn the PSC and Bissell from

judgment was issued did not undermine respondent's status as a prevailing party eligible for attorney's fees. Affirmance order, 845 F.2d 327 (1988).   In an unpublished opinion, the   majority characterized the relief plaintiffs had received as declaratory relief.  The panel majority noted our recent holding in *Hewitt v. Helms, supra*, that a plaintiff must receive some relief on the merits of his claim before he can be said to have prevailed within the meaning of § 1988.  It observed, however, that the plaintiff in *Hewitt*, unlike Stewart, had not won a declaratory judgment, and concluded that the declaratory judgment issued in this case justified the granting of attorney's fees.

*Rhodes v. Stewart*, 488 U.S. 1, 3 (1988).  The Supreme Court went on to declare:

The Court of Appeals misapprehended our holding in *Hewitt*. Although the plaintiff in *Hewitt* had not won a declaratory judgment, nothing in our opinion suggested that the entry of such a judgment in a party's favor automatically renders that party prevailing under § 1988. Indeed, we confirmed the contrary proposition:

"In all civil litigation, the judicial decree is not the end but the means.  At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces--the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought *through* the court, but *from* the defendant.  This is no less true of a declaratory judgment suit than of any other action.  The real value of the judicial pronouncement--what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion--is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*." 482 U.S., at 761, 107 S. Ct., at 2676 (emphasis in original).

divisions.  It regulated electric companies, water companies, telephone companies, gas companies, long distance telephone companies, sewer companies, telecommunication companies, and transportation companies. An Executive Director of the Commission implemented all necessary action required to accomplish the duties, responsibilities, and assignments of each division in an effective and efficient manner.  Each division of the PSC had its own individual director with similar responsibilities within his division.

The Motor Carrier Safety Section regulated OOIDA's members.  It was but a sub-section of the Transportation Division that commanded a low profile within the Commission's primary functions.

Although elected statewide, each public service commissioner had been required to maintain a legal residence in one of the state's three grand divisions and was considered to represent that grand division on the PSC.  The enforcement structure of the Motor Carrier Safety Section was virtually autonomous.  A captain was in charge of each grand division wherein a commissioner maintained a residence.  An additional fourth captain was in charge of seven counties designated as the Upper East Tennessee Section.  Below each captain were lieutenants, sergeants, and enforcement officers who were assigned to various counties within each of the four state divisions.  The court record is silent and does not identify the geographical grand division which Bissell or the other two commissioners maintained residences.  The court record fails to identify the geographical grand division where the alleged constitutional infringements occurred or who was responsible for the implementation of any unconstitutional acts.

The autonomy exercised by the Motor Carrier Safety Section is demonstrated by the example described by the district court wherein it alludes to one of two identified individuals in the melee of faceless and nameless bureaucrats referred to as "the defendants." "Capt. LeFevers conducted his own roving court by using his unbridled discretion dismissing citations and carrying out his own wishes and the wishes of his [unidentified] superiors." The district court's opinion attached no identity to the testimony it relied upon to support its conclusion that unconstitutional practices were being implemented.

*The four captains* of the autonomously operating geographical divisions usually met monthly in Nashville with certain [unidentified] staff to discuss PSC matters and review enforcement procedures and assignments later conveyed to their respective staff members.  The subordinate enforcement officers were expected to follow their captain's

The record developed during the course of this legal action discloses no reason for the legislative action that eliminated the PSC or caused Keith Bissell to resign his position as one of its three elected commissioners but rather confirms that both acts were voluntary and not mandated by law or judicial decision.

Although tried in Nashville, where the 132-member Tennessee General Assembly convened annually to transact its official agenda, not one of its 33 state senators or 99 state representatives appeared at trial or attested support for Plaintiffs' claim that their lawsuit caused or influenced the legislation that eliminated the PSC. Nor have the Plaintiffs referenced the General Assembly Record to reflect support, or even knowledge by the state legislature of Plaintiffs' lawsuit as an influencing factor for abolishing the PSC. Similarly, the court record available for this appellate review is bare of any reason for Bissell's resignation from the PSC. Having concluded that Plaintiffs received no judicially-awarded relief to support an award of "prevailing party" attorney fees to Plaintiffs against Bissell, the district court, nevertheless, accomplished that result by *sua sponte*, without notice to Bissell, applying the "catalyst test."

This circuit, having endorsed the "catalyst test" in cases where a voluntary change in a defendant's conduct has benefited the plaintiff, has also imposed the following two-part test to determine the propriety of applying the test:

First, in order to qualify as a "prevailing party," a plaintiff must demonstrate that his or her lawsuit was causally related to securing the relief obtained. This determination is factual.

---

orders. Beyond speculation, no nexus has been developed between this compartmentalized operation, the captains, Bissell, or the other commissioners.

The cascading errors inherent to this controversy originated on August 10, 1994, when the district court issued its curt one-sentence judgment and order that stated "the Court hereby enjoins Defendant Keith Bissell from continuing to violate the Plaintiffs' rights." The district court in that order also stated, "The Memorandum and Opinion contemporaneously filed herewith constitutes this Court's findings of fact and conclusions of law…."

The district court's memorandum of August 10, 1994, which anchors this appellate panel majority's disposition is, unfortunately, nothing more than a showcase of factually unsupported ambiguities addressing the activities, with the exception of a Capt. LeFevers and Jackie Pope, of a sprawling compartmentalized political bureaucracy of great magnitude administered by countless nameless and faceless political appointees. The amorphous character of the district court's disposition was recognized in the unedited version of a decision issued by an earlier panel of this court on August 21, 1997, which reversed and vacated the district court's decision as it related to Bissell and remanded the case to the district court with instructions for further consideration.

Although I concur with the panel majority's statement that "the record does lack specific findings of fact by the district court to support its conclusion that Bissell's actions [resigning as commissioner of PSC] and the abolition of the PSC were in response to the district court's early holding that widespread unconstitutional practices were taking place," I take issue with its factual and legal conclusions that "the [unidentified] declaratory judgment issued by the district court [as related to Bissell] is sufficient reason alone to deem OOIDA a 'prevailing party' in this case." The statement contradicts the direction of the Supreme Court in *Rhodes v. Stewart*, 488 U.S. 1 (1988) and *Farrar v. Hobby*, 506 U.S. 100 (1992). In *Rhodes*,

[a] divided Court of Appeals [had] upheld [an] award of fees, concluding that the mootness of the claim when the

dated August 21, 1997 to identify Bissell's unconstitutional behavior by observing that "[a]lthough the record does lack specific findings of fact by the district court to support its conclusion that Bissell's resignation and the abolition of the PSC were in response to the district court's early holding that unconstitutional practices were taking place," (all of which "holdings" had been vacated by an earlier panel of this circuit in *Owner-Operator Independent Drivers Association v. Bissell,* No. 94-6178/6179, 1997 WL 525411 (6th Cir. Aug. 21, 1997)), and appeared to have endorsed a finding that the application of the "catalyst test" to the instant case was not warranted to dispose of the Plaintiffs' petition for an award of attorney fees.

Thereafter, the panel majority contradicted the above finding in its first footnote by reasoning that "[t]he [unidentified] declaratory judgment operated as a catalyst to force Bissell's resignation and a restructure of the PSC. That was the *conclusion of the district court which had no direct evidence on this issue* but had ample [unidentified] circumstantial evidence [which evidence was not presented to this chambers for review, and not disclosed in the joint appendix, trial court decisions, or other court records] upon which it could have drawn that inference." (Emphasis added).

The panel majority's concurring decision is also less than helpful in identifying the district court's "*rather dramatic judicial findings* [that] had a catalytic effect in ending the discrimination complained of." (Emphasis added).

---

received a preliminary injunction from a district court after which, by a consent decree approved by the court, the plaintiffs dismissed their lawsuit seeking a permanent injunction after the defendant agreed to desist from pursuing the action the plaintiffs sought to enjoin. The *Village of Crestwood* case is fully in accord with the pronouncements of *Rhodes v. Stewart*, 488 U.S. 1 (1988), and *Farrar v. Hobby*, 506 U.S. 100 (1992).

Secondly, plaintiff must establish some minimum basis in law for the relief secured. … "If it has been judicially determined that defendants' conduct, *however beneficial it may be to plaintiffs' interests, is not required by law*, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense."

*Johnston v. Jago*, 691 F.2d 283, 286 (6th Cir. 1982) (emphasis added) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 281 (1st Cir. 1978)). *See Hewitt v. Helms*, 482 U.S. 755, 761 (1987) ("[I]f the defendant, under pressure of the lawsuit, alters his conduct … towards the plaintiff that was the basis for the suit, the plaintiff will have prevailed.").

In the instant case, the Plaintiffs have failed on both accounts. Without *some* material evidence that its lawsuit was the "catalyst" that induced the Tennessee General Assembly to dissolve the elected PSC and reassign its responsibilities to an appointed Board of Directors and other existing agencies, and caused Bissell to resign, the Plaintiffs should not be permitted to assume "prevailing party" status and an award of attorney fees by exploiting and capitalizing on a series of events over which they exercised no control, which fortuitously occurred while their lawsuit pended before a court.

The absence of evidence to support the district court's conclusion, apart from its own speculation that Plaintiffs' lawsuit was the "catalyst" that caused the *Tennessee General Assembly* to abolish and restructure the PSC and Bissell to resign, is understandable and obvious from the record of proceedings. *The court acted sua sponte*. It afforded the parties no notice of its intended action. It afforded the parties no hearing to develop a record of evidence bearing upon the propriety or impropriety of applying the test. It afforded Bissell no opportunity to brief and/or argue the negative legal consequences of interposing the test into the case, which ultimately became the legal premise relied upon by the district court finally to dispose of Plaintiffs' petition seeking an

award of attorney fees from Bissell to the exclusion of all other real parties defendant to this lawsuit, including Steve Hewlett and Frank Cochran, the other two PSC elected commissioners without whom Bissell could not have acted.

Recognizing that the panel majority will argue that the mandates of this circuit as expressed in *Employers Insurance of Wausau v. Petroleum Specialties, Inc.,* 69 F.3d 98 (6th Cir. 1995), apply only to summary judgment considerations, the reasoning and precedent of that decision is, nevertheless, equally applicable to comparable controversies, as in the instant case, wherein a district court issued a *sua sponte* final disposition adversely affecting a real party in interest to the litigation:

[T]he Supreme Court has held that "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, *so long as the losing party was on notice that she had to come forward with all of her evidence.*" *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (emphasis added). Therefore, there is no per se prohibition on entering summary judgment, *sua sponte*.

Nevertheless, as Fed. R. Civ. P. 12 and *Catrett* demonstrate, a district court *does not have sweeping authority to enter summary judgment* [*or any other final disposition*] *at any time*, *without notice*, against any party…. [T]he procedural decision to enter summary judgment [or any other final disposition] *sua sponte* must also be reviewed to determine if the court abused its discretion by entering judgment on its own motion.

*Employers Ins. of Wausau v. Petroleum Specialties, Inc.* 69 F.3d 98, 105 (6th Cir. 1995) (some emphases added) (some citations omitted). The Court observed:

The latter principle reflects a common sense application of the law. Courts of Appeal are courts of review. It would normally be impossible to determine

whether there is a disputed issue of material fact when a party has not had the chance to develop the record below. This would force an appeals court to serve as a sounding board for facts not properly in the record, simply because a party never had a chance to develop them. Similarly, as in this case, the court might be left to review the entire record for any disputed questions of fact or to weigh and examine facts never properly advanced below with regard to Wausau because PSI never thought Wausau was moving for anything, let alone complete relief.

Generally, before summary judgment [or any other final disposition] can be granted against a party, Fed. R. Civ. P. 56(c) mandates that the party opposing summary judgment be afforded notice and reasonable opportunity to respond to all the issues to be considered by the court. *Routman* [*v. Automatic Data Processing, Inc.*, 873 F.2d 970, 971 (6th Cir.1989)]. *See also Portland Retail Druggists Ass'n v. Kaiser Foundation Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981).

*Employers Ins. of Wausau*, 69 F.3d at 105.

Initially, the panel majority appeared to have rejected the district court's *sua sponte* final disposition charging Bissell with the payment of approximately $600,000 in prevailing party attorney fees to the Plaintiffs by applying the "catalyst test"[3] and its failure to respond to this court's earlier mandate

---

[3]The district court's precedent justifying its actions is a district court decision from the Seventh Circuit, *Doe v. Village of Crestwood*, 764 F. Supp. 1258 (N.D. Ill. 1991), which presents an unresolved conflict with its circuit court's disposition of *Libby by Libby v. Illinois High School Association*, 921 F.2d 96 (7th Cir. 1990). Moreover, *Village of Crestwood* is facially distinguishable from this case. Unlike the instant case wherein Plaintiffs seek the benefit of recovering attorney fees as the result of *voluntary legislative action and personal action by Bissell undertaken without legal or judicial mandate which fortuitously happened to occur while its lawsuit pended before a court*, the plaintiffs in *Village of Crestwood* sought prevailing party attorney fees after having