Anthony ALEXANDER,
Plaintiff–Appellant,

v.

Kim CARRICK, Food Service Director;
Steve Chapman, Corrections Officer;
Terri Swift, Corrections Officer;
Sandy Shaw, Chaplain, Defendants–
Appellees.

No. 00–1261.

United States Court of Appeals,
Sixth Circuit.

March 19, 2002.

Before JONES and DAUGHTREY,
Circuit Judges; ECONOMUS, District
Judge.*

PER CURIAM.

Anthony Alexander, a Michigan inmate
proceeding *pro se*, appeals the judgment of

* The Honorable Peter C. Economus, United
States District Judge for the Northern District

of Ohio, sitting by designation.

the district court granting summary judgment to the defendants in this action brought under 42 U.S.C. § 1983. Alexander practices the Hebrew–Israelite or Nazerite religion and adheres to its various laws and dietary restrictions. In particular, he has taken a lifetime vow as a Nazerite to eat nothing made of grapes. In this action seeking monetary and injunctive relief, Alexander alleges that several employees of the Michigan Department of Corrections ("MDOC") violated his First Amendment rights when they refused to accommodate his request for a special diet free of grape products. For reasons we shall discuss, we affirm the judgment of the district court.

## I.

The pertinent facts are summarized from the proceedings below. At all times relevant to this litigation, Alexander was an inmate at the Chippewa Regional Correctional Facility ("Chippewa") in Kincheloe, Michigan. On June 4, 1998, while on administrative segregation status, Alexander was placed in a double-bunk room with another prisoner. Alexander complained to prison officials that he would not accept double-bunk conditions, and warned security that if forced to double-bunk, he would engage in a self-mutilating behavior. Alexander subsequently made a three-inch laceration on his right forearm which required immediate medical attention. He was then removed from this area and placed in a close observation cell.

Prisoners on close observation status present an increased security risk and, as such, are not permitted access to any item that could be used as a dangerous weapon. As a result, these prisoners do not receive eating utensils with their meals. Instead, they are served "finger foods" in a paper bag. On June 5, 1998, Alexander was served a breakfast bag which included an eight-ounce carton of milk, fruit, and a peanut butter and jelly sandwich. When he inspected the sandwich and discovered that it contained grape jelly, Alexander informed defendant Chapman that per his religious vows, he could not eat grapes or grape products.[1] Alexander requested that defendants prepare for him a plain peanut butter sandwich.

Defendant Chapman told Alexander that no special bag would be prepared for him, and demanded that Alexander return the uneaten sandwich. Alexander refused, however, to return the food until he could speak with a resident supervisor. Defendant Swift spoke with Alexander and informed him that Swift had contacted the institutional chaplain, who would see Alexander in a matter of days. Defendant Swift further told Alexander that disciplinary action would be taken against him as a result of his refusal to return the sandwich to Chapman. Alexander was subsequently placed on a "Nutri-loaf" diet for a period of seven days.[2] On June 10, 1998, Alexander met with chaplain Shaw and explained why he could not eat the sandwich or any other food containing a grape product. Shaw discussed the possibility of a Kosher diet with Alexander, but Alexander explained that such a diet would not solve his prob-

---

1. Alexander cites the following verses in the Bible:

     And the Lord said to Moses;
     Say to the people of Israel, When either a man or a woman makes a special vow, the vow of a Nazerite, to separate himself to the Lord, he shall separate himself from wine and strong drink, and shall not drink any juice of grapes or eat grapes, fresh or dried.

     All the days of his separation he shall eat nothing that is produced by the grapevine, not even the seeds or the skins.
     Numbers 6:1–4.

2. We understand that Nutri-loaf is loaf of ground food served as a disciplinary sanction to disorderly and riotous inmates.

lem with grapes or adequately address his various other dietary restrictions. Alexander was thereafter told that he simply could not receive a special grape-free diet.

After he was removed from the Nutriloaf diet, Alexander refused the peanut butter and jelly sandwiches again on June 12 and June 13. He began accepting meals on a regular basis on June 14, 1998. Alexander was finally removed from close observation status on June 24, 1998 and was placed on a non-pork diet at his request. Alexander later filed the instant claim alleging, *inter alia,* that the MDOC employees violated his First Amendment rights by refusing his request for a grape-free diet while he was on close observation status. Defendants countered that Alexander's complaint should be dismissed for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1996, 42 U.S.C. § 1997e(a). In the alternative, defendants argued that they were entitled to qualified immunity on the ground that they did not violate any constitutional right held by Alexander, or that any right violated was not clearly established in the law at the time these events occurred.

The matter was referred to a magistrate judge who concluded that the exhaustion requirement did not require dismissal of the lawsuit, but that the defendants were nonetheless entitled to summary judgment on the basis of qualified immunity. On February 2, 2000, the district court adopted the findings and recommendations of the district court, and dismissed Alexander's complaint in its entirety.

## II.

We review *de novo* the district court's grant of summary judgment. *See Dietrich v. Burrows,* 167 F.3d 1007, 1010 (6th Cir.1999). At the outset, we note that Alexander's transfer from the facility at Chippewa to a different prison facility effectively moots his claims for declaratory and injunctive relief. The record indicates that Alexander has been transferred out of Chippewa and is now incarcerated at the Marquette Branch Prison in Marquette, Michigan. He is therefore no longer under the control or in custody of the defendants. We have held that transfer to another prison facility moots a prisoner's injunctive and declaratory claims. *See Mowatt v. Brown,* No. 89–1955, 902 F.2d 34, 1990 WL 59896 at *1 (6th Cir. May 9, 1990); *Tate v. Brown,* No. 89–1944, 902 F.2d 35, 1990 WL 58403 at *1 (6th Cir. May 3, 1990); *Howard v. Heffron,* No. 89–1195, 884 F.2d 1392, 1989 WL 107732 at *1 (6th Cir. Sept. 20, 1989).

Thus, we are left to consider Alexander's claim that he is entitled to damages as a result of defendant's failure to provide a grape-free diet while he was on close observation status. The district court correctly held that the PLRA did not require dismissal of the complaint for failure to exhaust administrative remedies. Alexander contends that he attempted to appeal the rejection of his Step I grievance by making several written and one verbal request for grievance appeal forms. Alexander states that the grievance coordinator first ignored his requests and later directly refused to give Alexander an appeal form. According to Alexander, the grievance coordinator told him that such an appeal was improper and that there were no further remedies. We have previously held that the exhaustion requirement should not operate as an absolute bar to an inmate's claim where prison administrators prevent or altogether refuse to review the allegations on which the claim is based. *See Wyatt v. Leonard,* 193 F.3d 876, 879 (6th Cir.1999); *Fish v. Sapp,* No. 99–6665, 3 Fed.Appx. 334, 2001 WL 111671 at *2 (6th Cir. Jan.29, 2001).

▮ Alexander's complaint nevertheless does not survive the defense of quali-

---

**179**

fied immunity. Generally, prison officials may rely on the doctrine of qualified immunity to protect them from liability for civil damages. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The qualified immunity analysis is essentially a two-pronged inquiry. We must first determine whether the plaintiff has alleged a violation of a constitutional right and next determine whether that constitutional right was clearly established at the time the officials acted. *See Turner v. Scott,* 119 F.3d 425, 429 (6th Cir.1997). The Supreme Court, however, has held that the analysis is satisfied if it appears that the plaintiff has failed to demonstrate a constitutional violation in the first instance. *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

This is such a case. We need not proceed any further than the first prong of the qualified immunity analysis as Alexander has not demonstrated a constitutional violation. The cases bear out that prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions. For the inmate, this is essentially a constitutional right not to eat the offending food item. If the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated. *See Barnes v. Mann,* No. 93–5684, 12 F.3d 211, 1993 WL 483236 at \*1 (6th Cir. Nov.22, 1993) (right to a pork-free diet); *Robinson v. Jordan,* No. 89–5967, 900 F.2d 260, 1990 WL 47551 at \*2 (6th Cir. Apr. 17, 1990) (Constitution requires adequate diet without violating religious beliefs, not *per se* right to a pork-free diet); *Jabbaar v. Campbell,* No. 87–5033, 826 F.2d 1063, 1987 WL 38430 at \*2 (6th Cir. Aug.10, 1987) (right to a pork free diet); *Perkins v. Danvers,* No. 85–3135, 780 F.2d 1022, 1985 WL 13991 at \*1 (6th Cir. Nov. 8, 1985) (right to a pork-free diet).

Thus, Alexander's problem is two-fold. The case law does not support his claim that the denial of his request for a food substitution (a plain peanut butter sandwich) by itself violated a First Amendment right. Second, there is no evidence in the record on which to conclude that he would have been malnourished but for the peanut butter and jelly sandwich. This is all the more true as the record indicates that (i) his finger food diet continued only while he was on close observation status; (ii) he was on the Nutri-loaf diet for a third of the time he spent on close observation; and (iii) he was served the peanut butter and jelly sandwiches with some, but not all, of the meals he received while on close observation. The district court's judgment is, accordingly, affirmed.