**William WELCH, Plaintiff–Appellee,**

v.

**Don SPAULDING; Brad Purves; Steward G. Kusey, Defendants– Appellants.**

**No. 14–2050.**

United States Court of Appeals, Sixth Circuit.

Sept. 30, 2015.

---

BEFORE: BOGGS, McKEAGUE, and DONALD, Circuit Judges.

## OPINION

BERNICE BOUIE DONALD, Circuit Judge.

Defendants Don Spaulding ("Spaulding") and Brad Purves ("Purves") have filed an interlocutory appeal from a district court order denying their motion for summary judgment based on qualified immunity. William Welch ("Welch"), a Michigan prisoner proceeding pro se, filed this civil-rights action pursuant to 42 U.S.C. § 1983. Welch sued Spaulding, the Food Service

Director at Saginaw Correctional Facility ("SRF"), where Welch was incarcerated during the relevant time; Purves, the Food Service Program Manager for the Michigan Department of Corrections ("MDOC"); and Glenn Kusey ("Kusey"), an Acting Food Service Supervisor at SRF, in their individual and official capacities. He alleged that the defendants violated his First Amendment right to the free exercise of his religion, Nation of Islam, by providing him meals that contained approximately half the daily calories provided to the general prison population during the month of Ramadan. Welch stated in his complaint that he contacted Spaulding several times regarding the low-calorie meals. Spaulding responded that the general prison population received approximately 2600 calories per day, but that he did not know how many calories the two bagged Ramadan meals provided each day contained. After several communications with Spaulding had no impact on the meals he received, Welch filed a grievance with prison authorities regarding the allegedly nutritionally deficient meals. Kusey responded that SRF food service followed the Ramadan menu provided by the MDOC Central Food Service Project Manager (Purves). Welch's Step II and III appeals were denied.

Welch then filed the present civil-rights complaint in federal court, seeking injunctive relief as well as compensatory and punitive damages. He attached to his complaint menus both for inmates observing Ramadan and for the general prison population and calorie counts for the various food items provided. The defendants moved for summary judgment, arguing that 1) their provision of two bagged meals to be eaten before sunrise and after sundown allowed Welch to freely exercise his religion and 2) they were entitled to qualified immunity because Welch failed to show that they violated a clearly estab-

lished statutory or constitutional right. Welch responded with two separate pleadings opposing the defendants' motion.

On July 3, 2013, a magistrate judge issued a report recommending that the defendants' summary-judgment motion be granted in part and denied in part. Regarding the merits of Welch's § 1983 claim, the magistrate judge found that there remained a genuine issue of material fact as to whether the provision of Ramadan meals containing only half the calories of the regular menu infringed upon Welch's First Amendment right to free exercise of his religion. The magistrate judge also found that Kusey was entitled to summary judgment because the only allegation against him was his denial of Welch's grievance, and that Purves and Spaulding were entitled to qualified immunity from claims against them for damages in their individual capacities. However, the magistrate judge found that Purves and Spaulding were not entitled to summary judgment as to the claims for injunctive relief against them in their official capacities. Both the defendants and Welch objected to the report and recommendation.

On July 17, 2014, the district court partially adopted the magistrate judge's recommendation. The district court granted summary judgment to Kusey on the grounds recommended by the magistrate judge. The court also dismissed Welch's claims for declaratory and injunctive relief in light of the ruling in another Ramadan-meals case, *Heard v. Finco*, No. 13–cv–00373, 2014 WL 1347432 (W.D.Mich. Mar. 31, 2014), and because Ramadan 2013 had already occurred. However, the district court denied summary judgment and qualified immunity to Purves and Spaulding as sued in their individual capacities because it found that a prisoner's constitutional right to adequate nutrition was clearly es-

tablished in 2011, and a reasonable prison official should have known that a diet of approximately 1300 calories per day for 30 consecutive days was insufficient to maintain the health of a moderately active male inmate.

Purves and Spaulding have filed an interlocutory appeal, arguing that the district court erred in denying them qualified immunity on Welch's First Amendment claim.

We review de novo a district court's order denying qualified immunity. *Range v. Douglas,* 763 F.3d 573, 588 (6th Cir. 2014). In so doing, we view the facts in the light most favorable to Welch. *Holzemer v. City of Memphis,* 621 F.3d 512, 519 (6th Cir.2010). Government officials are typically immune from civil liability under § 1983, and may assert qualified immunity as an affirmative defense to charges under the statute. The burden then shifts to the plaintiff to show that the defendant officials are not entitled to immunity. *Burgess v. Fischer,* 735 F.3d 462, 472 (6th Cir.2013) (citing *Chappell v. City of Cleveland,* 585 F.3d 901, 907 (6th Cir.2009)). A plaintiff makes this showing when he demonstrates that 1) his allegations give rise to a constitutional violation and 2) the right violated was clearly established at the time of the incident. *Plumhoff v. Rickard,* —— U.S. ——, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014) ("An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct.") (quoting *Ashcroft v. al–Kidd,* 563 U.S. 731, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)); *see also Burgess,* 735 F.3d at 472 (citing *Campbell v. City of Springboro,* 700 F.3d 779, 786 (6th Cir.2012). "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable gov-

ernment official would understand that what he is doing violates that right." *Colvin v. Caruso,* 605 F.3d 282, 290 (6th Cir. 2010) (quoting *Harris v. City of Circleville,* 583 F.3d 356, 366–67 (6th Cir.2009)) (internal quotation marks and modifications omitted)). The Supreme Court has instructed courts "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff,* 134 S.Ct. at 2023 (citation and internal quotation marks omitted).

■ Welch asserts that he has a clearly established right to Ramadan menus that approximate the caloric value of the regular prison menus and that the defendants knowingly and unreasonably violated that right. He argues that the defendants' provision of Ramadan menus containing only half the calories of the regular prison menus places a great strain on his resolve to follow the dictates of his religion and observe the Ramadan fast. The defendants, on the other hand, argue that, although this court has recognized a clearly established right to a nutritionally adequate diet, *see Colvin,* 605 F.3d at 290; *Cunningham v. Jones,* 567 F.2d 653, 656–59 (6th Cir.1977) (*Cunningham I*), it has not mandated a certain number of calories to be provided in that diet.

In *Colvin,* we held that it was clearly established in the First Amendment context that "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions." 605 F.3d at 290 (quoting *Alexander v. Carrick,* 31 Fed.Appx. 176, 179 (6th Cir.2002)). A number of other circuits have similarly recognized that "[i]nmates ... have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt,* 833 F.2d 196, 198 (9th

Cir.1987); *see also Nelson v. Miller*, 570 F.3d 868, 879–80 (7th Cir.2009); *Kind v. Frank*, 329 F.3d 979, 981 (8th Cir.2003). In *Colvin*, a prison chaplain mistakenly refused the plaintiff's application for a kosher diet; as a result, the prisoner was limited to eating only fruit for 16 days. *Colvin*, 605 F.3d at 291. While noting that the case "presents a clos[e] call regarding whether Colvin received food sufficient to sustain him in good health," we ultimately granted the chaplain qualified immunity because Colvin failed to point to any evidence that the chaplain acted unreasonably or knowingly, and the chaplain "worked as quickly as possible to ensure that Colvin received kosher meals" once the mistake was discovered. *Id.* (alteration and internal quotation marks omitted).

In *Cunningham I*, a prisoner in solitary confinement was given only one meal per day for 15 days. In the absence of any proof as to the calorie count of that meal, we could not determine whether this one meal per day "was sufficient to maintain normal health" so as to comply with the Eighth Amendment, and remanded the case to the trial court to determine the nutritional content of that meal. *Cunningham I*, 567 F.2d at 660. Although Judge Edwards's opinion observed that "sedentary men on the average need 2000 calories or more to maintain continued health," *id.* at 657, it did not clearly establish a minimum caloric requirement. On appeal after remand, the jail cook estimated that the caloric content of the single meals was between 2,000 and 2,500 calories. *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir.1982) (*Cunningham II*). On that evidence, we affirmed the district court's dismissal of the claim, finding that 2,000 to 2,500 calories per day "was sufficient to maintain normal health for the 15 days involved." *Id.*

Welch had a clearly established right to a nutritious diet during Ramadan. While we should avoid "defin[ing] clearly established law at a high level of generality," *Plumhoff*, 134 S.Ct. at 2023, we also decline to define nutritional adequacy in the First Amendment context in terms of specific daily caloric requirements. This is because nutritional adequacy is a multi-factored concept. Accordingly, the question of whether a prison official has knowingly provided a nutritionally inadequate diet is a fact-specific inquiry that requires consideration of, inter alia, daily caloric content, duration of the diet, and the nutritional needs of the prisoner. Providing a single low-calorie meal to a well-fed prisoner, for example, is unlikely to cause malnourishment and therefore would not trigger a constitutional violation. But a diet comparable in caloric content to the one Welch received can, in fact, lead to malnourishment,[1] and there is no indication that Welch possessed characteristics that would have insulated him from potential malnourishing effects.[2]

---

1. "[C]alorie intake should not fall below 1,200 a day in women or 1,500 a day in men, except under the supervision of a health professional. Eating too few calories can endanger your health by depriving you of needed nutrients." Harvard Medical School, Health Solutions to Lose Weight and Keep it Off, Special Report 2009.

2. This is not to say that we require a showing of malnutrition for a plaintiff to proceed on such a claim. The fact that Welch did not document specific adverse health effects does not defeat his claim at this stage. A restrictive diet that "substantially diminish[es an inmate's] qualitative spiritual experience" during Ramadan can be a substantial burden in the First Amendment context. *Makin v. Colorado Dep't of Corr.*, 183 F.3d 1205, 1212 (10th Cir.1999). The temptation to break the Ramadan fast due to hunger and discomfort caused by a nutritionally inadequate diet may substantially burden an inmate's right to free exercise of religion. *Couch v. Jabe*, 479 F.Supp.2d 569, 589 (W.D.Va.2006).

■ Several facts in this case distinguish it from *Colvin* and *Cunningham.* Welch has submitted nutritional charts with estimates of his daily intake during the month of Ramadan. Tying individual menu items to their respective caloric values, Welch alleges he was fed approximately 1,300 calories per day during the 30–day period, though he claims that some days he received less than 1,200 calories. Thus, viewing his claim in the light most favorable to him, Welch was receiving approximately 65% of what we recognized in *Cunningham I* to be the daily requirement for an average sedentary man to maintain normal health. 567 F.2d at 657. Moreover, the prisoners in both *Colvin* and *Cunningham* only endured the modified diets in question for 15 and 16 days, respectively: that Welch had to subsist on his reduced rations for an entire month worsens the scenario. Finally, we emphasized in *Colvin* that the chaplain responsible for denying the plaintiff kosher meals had no apparent knowledge of the mistake, and when he found out, took immediate steps to provide nutritious kosher meals once the mistake was discovered. *See* 605 F.3d at 290. In context, his prompt action persuaded us he ought to retain qualified immunity.

Here, by contrast, the menus and calorie counts for the various menu items were available to the defendants as they were to Welch, and Welch informed both Purves and Spaulding of the meals' caloric deficiency. They cannot rely, therefore, on their argument that they did not have actual knowledge of the caloric content in the Ramadan meals. Moreover, unlike the chaplain in *Colvin,* Purves and Spaulding allegedly took no remedial action after Welch complained to them, even though there seems to be no reason that additional bagged meals could not have been provided. *See also Carter v. Washington Dep't of Corr.,* No. C11–5626, 2013 WL 1090753, at *13 (W.D.Wash. Feb. 27, 2013) (finding no constitutional violation because prison officials "corrected the caloric values of the Ramadan meals and when that was still insufficient, they added supplements to the meals to ensure that the goal of 2700 average calories was met.").

The legal question of immunity will ultimately depend on which version of the facts the jury finds most credible. *Brandenburg v. Cureton,* 882 F.2d 211, 216 (6th Cir.1989). Thus, we find as a matter of law that it is clearly established that the prison must provide adequate nutrition to prisoners, despite religious restrictions. Welch has demonstrated that his allegations—if accepted by a jury—give rise to a constitutional violation. He has therefore made *Plumhoff's* required showing to defeat defendants' claim of qualified immunity at this stage, and established a genuine issue of material fact regarding whether the particular restricted diet in his case was so lacking as to violate this established right.

Accordingly, we AFFIRM the district court's order denying qualified immunity.

McKEAGUE, Circuit Judge, dissenting.

This qualified-immunity case presents two purely legal questions of constitutional interpretation. After taking the facts in the light most favorable to the plaintiff— *i.e.,* that the prisoner (Welch) received only 1,300 calories a day for the month of his religious fast—we must decide (1) whether administering such a diet violated the Constitution; and (2) if so, whether that violation was clearly established at the time of the fast. *See Plumhoff v. Rickard,* —— U.S. ——, 134 S.Ct. 2012, 2019, 188 L.Ed.2d 1056 (2014). If (and *only if* ) the answer to both questions is "yes," the case goes to a jury to see if Welch can prove the facts underlying his case. But if the

answer to either question is "no," then the state officials' qualified immunity protects them from any further proceedings. That's Qualified Immunity 101.

The majority answered "yes" to both questions, affirming the district court's denial qualified immunity. I would answer "no" to both, because Welch has not met his burden of producing evidence that shows a constitutional violation, much less a clearly established one.

The majority, however, affirms the district judge's improper denial of qualified immunity—improper both because (A) Welch did not meet his burden of producing evidence that the officials violated the Constitution; and because (B) even if they did violate the Constitution, the right at issue was not clearly established. Accordingly, I respectfully dissent.

### (A) Prong One

Welch cannot make out a constitutional violation because no evidence in the record shows that he suffered a substantial burden of his free exercise rights.

Inmates have the right to freely exercise their religion, although that right is necessarily limited because they are incarcerated. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). That right includes, we have noted, the right to receive "an *adequate diet* without violating [one's] religious dietary restrictions." *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir.2010) (emphasis added) (quoting *Alexander v. Carrick*, 31 Fed. Appx. 176, 179 (6th Cir.2002) (per curiam)). *But see* Eugene Volokh, *Prison officials' ordering Muslim prisoner-cook to handle pork may violate the Free Exercise Clause*, THE VOLOKH CONSPIRACY (June 29, 2015) (questioning whether this right still exists after *Employment Division v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)).

But this statement of law far from ends the case. We still must answer: What is an "adequate diet"? It is not, we know, a diet of the inmate's choosing. *Robinson v. Jackson*, 615 Fed.Appx. 310, 313 (6th Cir. 2015) (Donald, J., for the court); *see Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) ("The Constitution does not mandate comfortable prisons."). Nor is it a diet that is nutritionally *equivalent* to other prisoners' diets or *equivalent* to the diet of the average person in the plaintiff's age group. Nor, finally, is it a diet of a specific number of calories. *Accord* Majority Op. at 483–84.

No: To violate the First Amendment, the diet must impose a *substantial burden* on the inmate's exercise of religion. So when we use the phrase "adequate diet" in this context, we typically mean the "right not to eat the [religiously] offending food item" and to remain free from "malnourish[ment]" while doing so. *Alexander*, 31 Fed.Appx. at 179 (emphasis added) (collecting cases). Receiving half the calories as other prisoners during a fast is thus not constitutionally inadequate unless the prisoner can show—by sufficient evidence at the summary-judgment stage—that he "would have been malnourished" (or suffered a substantial burden in some other way) if he didn't give up his fast. *See id.* (granting summary judgment to the officials because the inmate did not have evidence that proved he would have been malnourished had he not given up his religious beliefs, even though he received only fruit and a loaf of ground food during a one-month span).

An illustration, common to the case law in this area, helps explain the rule. Some religious people abstain from eating pork. Yet when in prison, they are not "constitutionally entitled to a pork-free diet." *Barnes v. Mann*, 12 F.3d 211 (6th Cir. 1993) (unpublished). Rather, they are en-

titled to "adequate nourishment without the consumption of pork"—that is, not to be *malnourished* when they abstain from eating pork. *Id.; see Abernathy v. Cunningham,* 393 F.2d 775, 778 (4th Cir.1968). A prison can thus generally serve them meals with pork (or pork residue) so long as the meals consist of enough non-pork food to keep the prisoners nourished. *E.g., Jones v. Williams,* 791 F.3d 1023, 1034 (9th Cir.2015); *Perkins v. Danvers,* 780 F.2d 1022 (6th Cir.1985) (unpublished); *cf. Alexander,* 31 Fed.Appx. at 179. So long as the prisoner does not suffer a substantial burden (*e.g.,* malnourishment), his First Amendment rights have not been violated.

The question here thus becomes whether Welch produced sufficient evidence to show he was substantially burdened during his thirty-day fast. He plainly has not. Indeed, he does not even *allege* that he suffered *any* adverse effects (physical, spiritual, or otherwise) from receiving fewer calories during his fast, much less that he was malnourished while fasting. *See* R. 1 at 4–7. Welch has "failed to show that he needed [the extra calories] to remain healthy or to satisfy the dietary requirements of his religion." *See Jones,* 791 F.3d at 1034. He has also failed to show (or even allege) that he suffered a diminished "spiritual experience," *contra* Majority Op. at 483 (quoting *Makin v. Colorado Dep't of Corr.,* 183 F.3d 1205, 1212 (10th Cir.1999)), or that he was tempted to break his fast "due to hunger and discomfort," *contra id.* He thus cannot show that the prison officials substantially burdened his religious exercise. We have dismissed similar cases because they similarly lacked such evidence. *E.g., Alexander,* 31 Fed.Appx. at 179; *cf. Robinson,* 615 Fed.Appx. at 313. We should do the same thing here.

Welch's allegation of the number of calories he received—his only evidence—does not suffice to overcome the officials' immu-

nity. As the majority recognizes, the "nutritional adequacy in the First Amendment context" is not determined "in terms of specific daily caloric requirements," but rather by answering whether the diet would "cause malnourishment" or some other substantial burden. Majority Op. at 483; *accord Alexander,* 31 Fed.Appx. at 179. And to make that determination, the prisoner must allege, and then prove, some (*any* ) adverse effects—*i.e., some* substantial burden—that the diet caused him. *See id.* Even Welch's own testimony would suffice. But because Welch has no such evidence—not even his own testimony—he cannot meet his burden to prove a constitutional violation.

The majority's extra-record reference to a Harvard Medical School report fares no better. Majority Op. at 483 n. 1. This kind of extra-record "evidence" (to use the word loosely) cannot overcome a well-supported motion for summary judgment, for, if nothing else, our "review of a district court's summary-judgment ruling is confined to the record." *EEOC v. Ford Motor Co.,* 782 F.3d 753, 765 (6th Cir.2015) (en banc). The majority is grasping at straws.

The cases the majority cites do not change this conclusion. We have held that it could be a violation of the *Eighth* Amendment to take away meals from inmates when the remaining meals are not "sufficient to maintain normal health." *Cunningham v. Jones,* 567 F.2d 653, 660 (6th Cir.1977); *see Cunningham v. Jones,* 667 F.2d 565, 566 (6th Cir.1982) (the one remaining meal consisting of about 2,000 to 2,500 calories was sufficient to maintain normal health). But, as the majority concedes, these cases far from *mandated* a certain number of calories for prisoners across the board, and they had nothing to do with the *First* Amendment. On the other side of the coin, we have held that it does *not* violate the clearly established

right to an adequate diet to give a Jewish inmate "nonkosher food at every meal for ... 16 days" straight, leaving the inmate to eat only sides of fruit during those days. *Colvin*, 605 F.3d at 291. And we have held that a diet consisting solely of fruit and a loaf of ground food during a one-month span was insufficient to show a constitutional violation. *Alexander*, 31 Fed.Appx. at 179. Where, then, does the majority get its support?

It's certainly not from the other circuits' cases, because they offer no more justification for the majority's decision than our cases do. These cases merely establish the general principle that "[i]nmates ... have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir.1987). But still, *what does "good health" mean* ? The majority never answers that question. The other circuits do—in a much different way than this majority. Prison officials, they hold, cannot force someone to choose between giving up their fast and facing malnourishment or some other substantial burden. So officials are liable when the evidence shows, for example, that the fasting inmate "lost so much weight that he had to be hospitalized," *Nelson v. Miller*, 570 F.3d 868, 880 (7th Cir.2009); or that he was constantly hungry, "his bones began to protrude, he was cold, and he was depressed and anxious," *id.*; or even that his hunger and discomfort "substantially diminished his qualitative spiritual experience," *Makin v. Colorado Dep't of Corr.*, 183 F.3d 1205, 1212 (10th Cir.1999). But officials are *not* liable when all the inmate can show is that he didn't receive the diet he wanted or the diet other inmates received—with no alleged adverse effects. *E.g.*, *Jones*, 791 F.3d at 1034; *Kind v. Frank*, 329 F.3d 979, 981 (8th Cir.2003); *see Alexander*, 31 Fed.Appx. at 179. And that's all Welch can muster here.

It all, then, boils down to this: The majority holds that the First Amendment requires a specific number of calories during a religious fast. That's the only possible way to understand its judgment. It doesn't matter that the lower number of calories didn't cause *any* substantial burden—none. All that matters is that the number of calories the plaintiff received was less than the other inmates or others in the plaintiff's age group. Lacking even an alleged substantial burden, Welch cannot make out a First Amendment violation.

### (B) *Prong Two*

As misguided as the majority's novel constitutional holding is, the error in its determination of the clearly established law is worse. Even assuming the defendants violated Welch's First Amendment right to a nutritionally adequate diet during a prison fast, how can we *possibly* hold that such a violation was clearly established? There is simply *no way* that "*every* reasonable official would have understood" that administering a 1,300–calorie-per–day diet for thirty days during an inmate's religious fast—with no evident or even alleged adverse effects to the inmate—violates the First Amendment. *See Ashcroft v. al–Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011) (emphasis added) (internal quotation marks omitted). These officials should not be subject to personal liability because, if nothing else, Welch has not met his burden of showing that they violated a "clearly established" constitutional right.

What else must be said? I've already gone through all the cases the majority cites, and none of them establishes anything more than the generalized right to a "nutritionally adequate diet" during a religious fast. That was enough for the district court, and it's apparently enough for the majority, too. But it shouldn't be. The Supreme Court has "repeatedly told

courts ... not to define clearly established law at a high level of generality." *Plumhoff*, 134 S.Ct. at 2023. Courts must instead define the law in a *particularized* sense, by looking for a body of law that "squarely governs" the conduct at issue. *Brosseau v. Haugen*, 543 U.S. 194, 201, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). The majority's cited cases no more "squarely govern" this case than *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), "squarely governs" all excessive-force cases. *See Brosseau*, 543 U.S. at 199, 125 S.Ct. 596 (it doesn't). Indeed, until now, *not one* Sixth Circuit case has even allowed this kind of alleged violation to proceed to a jury. How, then, can the right be clearly established? The majority's telling silence on this issue—and its telling failure to even *try* to support its prong-two conclusion with caselaw—suffices to demonstrate its error.

If anything is clearly established here, it's that this was *not* a clearly established constitutional violation. If a diet of nothing but sides of fruit (presumably less than 1,300 calories per day) for sixteen-straight days did not violate a clearly established First Amendment right, *Colvin*, 605 F.3d at 291, how can this case come out differently?

Yet the state officials are now subject to personal liability. It shouldn't be that way. Qualified immunity operates in the "hazy border between" adequate and inadequate nutrition during a religious fast—it "ensure[s] that before [state officials] are subjected to suit, [they] are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). I cannot say—and nor can the majority say—that the state officials were "plainly incompetent" or that they "knowingly violate[d] the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Nor can anyone say, as we must before sending the case to a jury, that it is *beyond debate* that administering two meals rather than three, consisting of 1,300 calories rather than over 2,000—with no adverse effects (physical, spiritual, or otherwise)—violated the First Amendment. Because these food-services officials were not on sufficient, specific notice that their conduct violated the Constitution, they should be cloaked with qualified immunity.

\* \* \*

To affirm on the ground that the defendants violated a clearly established First Amendment right is wrong both because of the startling lack of facts to prove such a violation and because of the even-more-startling lack of caselaw to clearly establish that right.

I dissent.