NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 17a0088n.06

Case No. 16-6197

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 01, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ERIC LLOYD HERMANSEN, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| LADONNA THOMPSON, et al., | ) | O P I N I O N |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: GIBBONS, ROGERS, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Plaintiff Eric Hermansen is a Jewish prisoner in the custody of the Kentucky Department of Corrections, who alleges he was denied his First Amendment right to kosher meals while incarcerated at the Kentucky State Penitentiary ("KSP"). Hermansen commenced this civil rights action in April 2013, seeking declaratory, injunctive, and monetary relief. During proceedings below, the parties reached an agreement that substantially satisfied Hermansen's dietary demands. This agreement became the premise for rulings: (1) awarding summary judgment to the individual defendants based on qualified immunity; (2) denying the claim for injunctive relief as moot; (3) denying the claim for punitive damages for lack of a showing that defendants acted other than in good faith in attempting to accommodate Hermansen's strict dietary beliefs; and (4) denying Hermansen's request for

attorney's fees because he was not a "prevailing party." Hermansen challenges each of these rulings. For the reasons that follow, we affirm in all respects.

**I**

### A.  The *Froman* Litigation

Hermansen was transferred to KSP in February 2012, but that's not when his kosher diet difficulties began. He had formerly been incarcerated at the Kentucky State Reformatory ("KSR"). During his time at KSR, Hermansen was a plaintiff, with other Jewish inmates, in civil rights litigation regarding kosher dietary rights, *Froman v. Kentucky Dep't of Corrections*, No. 3:08-cv-243 (W.D. Ky.). The *Froman* case culminated in a settlement agreement whereby the Kentucky Department of Corrections adopted Kosher Meal Program Guidelines. *See* R.1, Complaint ¶ 29, Page ID 8; R. 1-1, Complaint App. B and C, Page ID 41–47. On May 25, 2010, the district court issued an order: (1) requiring all parties to abide by the settlement agreement and requiring the defendants to file monthly reports with the court outlining their compliance; (2) dismissing all other pending claims; (3) denying all pending motions; (4) establishing a deadline for the plaintiffs' motion for attorney's fees, if any; and (5) retaining jurisdiction to monitor settlement compliance and resolve attorney's fees issues. *Froman*, No. 3:08-cv-243 (W.D. Ky.), R. 138, Order, Page ID 1197. This was followed by an order on October 20, 2010, awarding plaintiffs attorney's fees and costs of $11,750 and $31.28, respectively, *id.*, R. 149, Order, Page ID 1276; and an order on June 21, 2011, closing the case after defendants had demonstrated compliance for over a year, *id.*, R. 166, Order, Page ID 1450.

Hermansen was one of three *Froman* plaintiffs who appealed the order closing the case. A panel of the Sixth Circuit affirmed, holding that the district court did not abuse its discretion in determining that the defendants had complied in good faith with the terms of the settlement

agreement. *Froman v. Kentucky Dep't of Corrections*, No. 11-5868 (6th Cir. June 14, 2012). After his transfer to KSP, Hermansen learned that the kosher meal guidelines implemented at KSR as a result of *Froman* were not being followed at KSP. He filed a motion in the *Froman* district court for issuance of a permanent injunction requiring implementation of the kosher meal guidelines at KSP and all other Kentucky Department of Corrections prisons. The district court denied the motion on September 18, 2012, holding that the settlement agreement reached in *Froman* applied only to KSR. *Froman*, No. 3:08-cv-243 (W.D. Ky.), R. 198, Order at 4, Page ID 1592. Hence, this action.

### B. Procedural Background

Hermansen filed his complaint *pro se* on April 30, 2013, proceeding against the Kentucky Department of Corrections ("KDOC") for injunctive relief; and against defendant LaDonna Thompson, KDOC Commissioner, and other KDOC employees for damages in their individual capacities. The 39-page complaint describes in detail Hermansen's dissatisfaction with KSP employees' assurances of their good faith efforts to meet his kosher food preparation requirements, including lengthy recitations of his various grievances and defendants' responses. R. 1, Complaint at 17–33, Page ID 17–33. In paragraph 94, Hermansen sets forth numerous particular ways in which the food storage and preparation practices in the separate kosher kitchen at KSP fell short of the strict requirements of his Jewish faith, allegedly rendering meals served to him and other Jewish prisoners not "truly kosher . . . in accordance with the Jewish laws of kashruth." *Id.* at 33–35, Page ID 33–35. Hermansen alleges that defendants have conspired to violate his First Amendment right to freely exercise his religion by refusing to comply with the Kosher Meal Program Guidelines adopted by way of settlement in *Froman*. He prays for

declaratory relief, injunctive relief, and monetary relief in the form of punitive damages, as well as attorney's fees and costs.

On September 23, 2013, the district court allowed Hermansen to amend his complaint to add a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, based substantially on the same allegations of denial of his right to kosher meals. R. 11, Order, Page ID 239. In the same order, the court *sua sponte* dismissed KDOC as a party. Counsel Gregory Belzley and Camille Bathurst of Prospect, Kentucky, entered their appearances on behalf of Hermansen on March 20, 2014.

Defendants moved for summary judgment on January 1, 2016, contending the claim for injunctive relief had been rendered moot by agreement reached and signed by the parties in December 2015; and that Hermansen could not recover on his claim for punitive damages because defendants were entitled to qualified immunity and because, in any event, there was no evidence of evil intent or reckless or callous indifference to Hermansen's rights. The Magistrate Judge addressed the motion for summary judgment and prepared proposed findings of fact and conclusions of law, recommending the motion be granted. R. 86, Recommendation, Page ID 640. The district court overruled Hermansen's objections, adopted the recommended findings and conclusions, and granted the motion for summary judgment. R. 91, Order, Page ID 683. In the same order, the court denied Hermansen's motion for attorney's fees as moot. On July 26, 2016, the district court denied Hermansen's motion for relief from judgment under Fed. R. Civ. P. 60(b)(1). R. 96, Order, Page ID 708.

## II

### A. Summary Judgment Ruling

Hermansen first challenges the summary judgment ruling based on qualified immunity. He contends his First Amendment right to kosher meals is clearly established law that defendants knowingly violated before the parties reached their December 2015 agreement.

We review the summary judgment ruling de novo. *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013). Under Rule 56, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The reviewing court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. *Smith*, 708 F.3d at 825.

Here, summary judgment was awarded to the individual defendants based in part on qualified immunity. Qualified immunity shields government officials from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The court must therefore determine (1) whether the facts shown by the plaintiff make out the violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The court may address these prongs in any order, but the defendant official is entitled to qualified immunity unless the plaintiff can make both showings. *Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015) (citing *Pearson*, 555 U.S. at 236). Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986)). Qualified immunity applies

irrespective of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231.

Since defendants raised the qualified immunity defense, Hermansen bears the burden of showing that defendants are not entitled to qualified immunity. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). At the summary judgment stage, this burden is carried by adducing facts that could reasonably support the finding that defendants violated a constitutional right that was clearly established at the time of the violation. To satisfy this latter requirement, the right allegedly violated must have been clearly established in a "particularized" sense, such that a reasonable official confronted with the same situation would have known that his actions would be in violation of that right. *Brosseau v. Haugen*, 543 U.S. 194, 199–200 (2004). In making the "clearly established" determination, we look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits. *Benison v. Ross*, 765 F.3d 649, 664 (6th Cir. 2014). To be deemed clearly established, existing precedent must have placed the unlawfulness of the officials' conduct "beyond debate." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014).

Both sides cite *Colvin v. Caruso*, 605 F.3d 282 (6th Cir. 2010), as defining the clearly established right that was allegedly violated before the parties reached their December 2015 agreement. *Colvin* recognizes that "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions." *Id.* at 290 (quoting *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002)); *see also Welch v. Spaulding*, 627 F. App'x 479, 482 (6th Cir. 2015) (applying the *Colvin* standard).

In substance, Hermansen's grievances at KSP did not involve the nutritional adequacy of foods he was given that are permissible to eat under kosher requirements. Rather, they stemmed

from his observations that he was occasionally served items not in strict compliance with kosher requirements (e.g., items of meat and dairy impermissibly served on the same tray; freeze-dried potato slices that he believed were not an approved kosher item). These instances allegedly resulted in contamination of kitchen space and utensils that must be properly "kashered," or made clean, by certification of a competent rabbi. Until such certification was obtained, food products subsequently prepared in such contaminated spaces with contaminated utensils were allegedly not kosher.

Hermansen's allegations find some support in the unsigned May 7, 2015 "expert report" of Rabbi Boruch Susman. R. 64-1, Statement, Page ID 449. The report describes Rabbi Susman's observations during an inspection of the KSP kosher kitchen on April 30, 2015. Observing that the kosher kitchen was "separate, locked and gated off from the general kitchen," and that "food ingredients and products used on the kosher menu were all acceptable," the report nonetheless noted that "complications with the kosher status of the utensils" were caused by their concurrent use for meat and dairy meals. *Id.* Rabbi Susman suggested various simple remedies. Indeed, the December 2015 agreement between the parties was directly responsive to Rabbi Susman's concerns and was approved by him. *See* R. 79-2, Agreed Report, Page ID 561.

Prior to that time, Hermansen contends defendants' failure to honor the strict requirements of his sincerely held religious beliefs was violative of his clearly established rights. Yet, he has failed to identify persuasive precedent from the Supreme Court, the Sixth Circuit, or any of our sister circuits specifically holding that any technical variance from the strict requirements of kashruth by prison officials violates Jewish prisoners' First Amendment rights.

As recently as last month, the Supreme Court unanimously and insistently reaffirmed its repeated admonition that, for purposes of qualified immunity, "clearly established law" is not to

be defined "at a high level of generality," but must be defined in a "particularized" sense. *White v. Pauly*, --- S. Ct. ---, No. 16-67, 2017 WL 69170 at \*4 (Jan. 9, 2017) (internal citations omitted). The Court reiterated that although "general statements of the law are not inherently incapable of giving fair and clear warning" to government officials, their conduct is protected by qualified immunity unless its unlawfulness was "apparent" or "obvious" in light of pre-existing law. *Id.* at \*5 (citations omitted).

Applying this teaching, we find the instant record devoid of support, in fact or law, for the notion that it should have been obvious to defendants that their provision of kosher food products to Hermansen, prepared in a separate kitchen facility, was nonetheless violative of his First Amendment free exercise rights because the same utensils used to prepare or serve otherwise approved meat products had also been used to prepare or serve otherwise approved dairy products, at some point, without having first been kashered and certified by a rabbi.

Hermansen contends these defendants are without excuse because they were on notice of the *Froman* case, where Kosher Meal Program Guidelines were implemented by agreement at KSR as early as 2010. Yet, even if one or more of the individual defendants was actually aware of the guidelines implemented by agreement at KSR, the fact remains that no court had, in authoritative precedent, interpreted the First Amendment as requiring strict compliance with the guidelines, whether at KSR or elsewhere. Even though the *Froman* agreement was enforced by district court order, it never ripened into a precedential ruling on the merits of the free exercise claim. The *Froman* agreement simply did not become precedent defining the "clearly established law."

Accordingly, there was no error in the district court's ruling that defendants are protected from damages liability by qualified immunity and are therefore entitled to summary judgment on Hermansen's First Amendment claim under 42 U.S.C. § 1983.[1]

## B. Denial of Injunctive Relief

After the district court awarded defendants summary judgment, Hermansen moved for relief under Fed. R. Civ. P. 60(b)(1), asking the court to incorporate the parties' agreement into an injunctive order. The district court declined, noting the parties' voluntary cooperation and seeing "no need to enter a separate judgment enforcing the agreement." R. 96, Order at 3, Page ID 710. On appeal, Hermansen argues that without a court order, there is no guarantee that defendants will continue to honor his rights, citing the June 22, 2016 declaration of Rabbi Susman, who stated:

> I was subsequently advised that a contamination of the kosher kitchen had occurred by use of the kitchen by inmates for heating non-kosher food, who then were passing the food over the fence into the other kitchen. This rendered the kitchen, and all food stored or prepared in the kitchen, non-kosher. On April 13, 2016, at the request of Defendants, I inspected and rekashered the kitchen so that it could again be used for the storage and preparation of kosher food.

R. 95-2, Susman Decl. at 1–2, Page ID 706–07.

Far from supporting Hermansen's argument, Rabbi Susman's declaration actually supports the district court's conclusion that the parties' agreement had mooted the claim for

---

[1] The same reasoning also justifies the district court's refusal to consider punitive damages. First, qualified immunity, where it applies, protects against liability for monetary damages, whether compensatory or punitive. Second, punitive damages are available in relation to a § 1983 claim only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Where a plaintiff has failed to overcome qualified immunity for lack of a showing that defendant's conduct was in obvious violation of clearly established law, the record can hardly be deemed to nonetheless meet the requisite showing of "willful or malicious conduct." *See id.* at 216 (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 n.9 (1986)).

injunctive relief and there was no manifest need for continuing judicial supervision. As Rabbi Susman recounted, when an incident causing contamination occurred, *defendants*, consistent with their agreement and without any need for judicial intervention, requested him to inspect and rekasher the kosher kitchen, which he did. This is compliance. This isolated episode hardly constitutes a guarantee of one hundred percent compliance with the agreed-to accommodation of Hermansen's religiously motivated dietary practices. It represents no ironclad assurance that inmates will never cause contamination again in the future. However, it clearly substantiates the continuation of good-faith cooperation, which obviates the need for federal judicial monitoring of state governmental officials. We find only wisdom and no error in the district court's restraint.

### C. Denial of Attorney's Fees

Hermansen moved the district court for attorney's fees and costs as prevailing party under 42 U.S.C. § 1988, noting that the parties had, in their agreement, expressly reserved the issue. In response, defendants did not contest Hermansen's entitlement to an appropriate award, but objected to the claimed fees and costs as excessive. *See* R. 88, Response, Page ID 655. The court initially denied the motion as moot, without explanation. R. 91, Order at 4, Page ID 686. But in response to the motion for relief under Rule 60(b)(1), the court "clarified" that Hermansen was not entitled to fees because he had not recovered damages. That is, even though the court misstated that Hermansen had "obtained injunctive relief," it held that he was not a prevailing party. R. 96, Order at 3–4, page ID 710–11.

We review for abuse of discretion. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Bissell*, 210 F.3d 595, 597 (6th Cir. 2000). "A district court abuses its discretion when it relies on clearly erroneous findings of fact . . . or when it improperly applies the law or uses an erroneous legal

standard." *Id.* (quoting *Christian Schmidt Brewing Co. v. Heileman Brewing Co., Inc.*, 753 F.2d 1354, 1356 (6th Cir. 1985)).

We agree with Hermansen that the district court applied an erroneous legal standard. In *Bissell*, cited here by both sides, we summarized the existing standard governing determination of "prevailing party" status under § 1988:

> Under 42 U.S.C. § 1988, district courts have the discretion to award attorneys' fees to a "prevailing party" in a civil rights lawsuit. A "prevailing party" need not actually prevail on the merits of its claim so long as it "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978). Any enforceable judgment, or comparable type of relief, or settlement, therefore, will generally make a plaintiff a "prevailing party" as long as "his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). A plaintiff is benefitted by "monetary damages, injunctive relief, or a voluntary change in a defendant's conduct." *Woolridge v. Marlene Indus.*, 898 F.2d 1169, 1173 (6th Cir. 1990).
>
> If the plaintiff's relief stems from a voluntary change in the defendant's conduct, the plaintiff must show that his or her lawsuit was the "catalyst" behind that change. *Payne v. Board of Educ., Cleveland City Schools*, 88 F.3d 392, 397 (6th Cir. 1996).

*Bissell*, 210 F.3d at 597–98.

Under *Bissell*, given that defendants voluntarily changed their behavior, Hermansen's right to recover attorney's fees would have been contingent on his ability to show that his lawsuit was the catalyst behind defendants' agreed-to change. However, the catalyst theory recognized in *Bissell* was rejected by the Supreme Court in *Buckhannon Board and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598 (2001). In *Buckhannon*, the Court limited the term "prevailing party" to a party who obtains either a judgment on the merits or a court-ordered consent decree. "A defendant's voluntary change in conduct, although perhaps

accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* at 605.

Under the terms of the Agreed Report, Hermansen obtained much of the relief that he sought. But it is undisputed that he never obtained a judgment on the merits or a consent decree. Rather, the district court viewed the December 2015 agreement and defendants' subsequent compliance with it as mooting both the need for a ruling on the merits and the need for any injunctive relief.

In *Toms v. Taft*, 338 F.3d 519 (6th Cir. 2003), we applied the rule of *Buckhannon* under circumstances closely analogous to those presented here. In *Toms*, like here, the plaintiffs had obtained a voluntary change in conduct as a result of a court-supervised settlement conference, but failed to obtain a judgment on the merits or a court-ordered consent decree or injunction. *Id.* at 529. In affirming the denial of attorney's fees, we held that "[p]rivate settlement agreements do not confer prevailing party status." *Id. Toms* dictates the same result in this case.

We acknowledge that defendants did not contest Hermansen's prevailing party status below; they merely challenged the amounts of fees and costs requested.[2] On appeal, defendants have attempted to defend the district court's denial of fees, but the sole rationale offered, citing *Bissell*, is that the accommodations granted Hermansen per the Agreed Report were gratuitous, not required by law. Though defendants thus fail to recognize that the catalyst theory is no longer good law, their argument is roughly consistent with the thrust of *Buckhannon* and *Toms*.

---

[2] Hermansen originally sought attorney's fees in the amount of $17,325 and costs of $1,313.37. R. 84, Renewed Motion at 3, Page ID 629. Defendants objected to the amount of time claimed and the hourly rate used to calculate the challenged fees and the lack of substantiation for the claimed costs. R. 88, Response in Opposition, Page ID 655. In reply, Hermansen adjusted the claimed fees downward to $10,527.30 and offered additional documentary support for recovery of costs totaling $1,943.78. R. 90, Reply at 2, Page ID 671.

We also acknowledge that the district court could be deemed to have abused its discretion, insofar as it did not apply the correct legal standard.[3] Yet, we may affirm on any grounds supported by the record. *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 435 (6th Cir. 2016). Because it is clear that defendants' changed conduct pursuant to the Agreed Report was voluntary and never received the requisite judicial *imprimatur*, Hermansen did not achieve prevailing party status and is not entitled to an award of fees under 42 U.S.C. § 1988. Fidelity to the teachings of *Buckhannon* and *Toms* compels us to uphold the district court's denial of attorney's fees.[4]

### III

Accordingly, we **AFFIRM** the district court's challenged rulings in all respects.

---

[3] The district court's order denying Hermansen's Rule 60(b)(1) motion for relief from judgment also includes language referring to the Agreed Report as "the Agreed Order" and describing as immaterial "the fact that Hermansen obtained injunctive relief." R. 96, Order at 3–4, Page ID 710–11. Review of the record, however, confirms that the terms of the Agreed Report were never incorporated into an order of any kind. Instead, the Agreed Report was filed in support of defendants' motion for summary judgment, which was granted as the court held judicial supervision and enforcement of the agreement unnecessary.

[4] Hermansen urges us to apply a different, more generous approach to the prevailing party determination, as did the Ninth Circuit in *Justin R. ex rel. Jennifer R. v. Matayoshi*, 561 F. App'x 619 (9th Cir. 2014), an unpublished ruling. We decline. *Toms* is controlling in the Sixth Circuit.